ESTATE OF JACK C. KEELER, DECEASED, JAMES M. OMPS, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Keeler v. Commissioner
Docket No. 29362-82.
United States Tax Court
T.C. Memo 1984-632; 1984 Tax Ct. Memo LEXIS 42; 49 T.C.M. (CCH) 243; T.C.M. (RIA) 84632; December 5, 1984. Flournoy L. Largent, Jr., for the petitioner. Richard F. Stein, for the respondent. DAWSON MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $22,386 and *43 an addition to tax pursuant to section 6651(a) [1] in the amount of $5,597. The only issue for decision is whether the notice of deficiency sent by respondent to petitioner is valid in light of the estate tax closing letter previously issued to petitioner. This case was submitted fully stipulated pursuant to Rule 122. [2] The stipulated facts and exhibits are incorporated herein by reference. The pertinent facts are summarized below. Jack C. Keeler, the decedent, died on September 2, 1972. The Executor of his estate (petitioner) resided in Winchester, Virginia when the petition was filed in this case. A United States Estate Tax Return, Form 706, was delinquently filed with the Memphis Service Center on July 13, 1980 (first return). This return provided neither the decedent's social security number nor the estate's employer identification number. On August 3, 1980, petitioner filed another United States Estate Tax Return(second *44 return), Form 706, with the Memphis Service Center, which included the decedent's social security number and the estate's employer identification number. In August 1980, Flournoy L. Largent, Jr. (Largent), the attorney for the estate, contacted the group manager of respondent's Richmond Estate and Gift Tax Group to request an expedited examination of petitioner's estate tax return. Largent provided the group manager with a copy of the second return. On August 26, 1980, this return was selected for audit. On September 24, 1980, the examination of petitioner's second return was assigned to estate tax attorney, Ronald N. Fiske (Fiske), in Baileys Crossroads, Virginia. The audit conducted by Fiske centered on the value of certain real property owned by the decedent at the time of his death in 1972. As a result of the normal classification procedure, petitioner's first return was selected for audit on January 19, 1981. On February 26, 1981, Largent spoke with estate tax attorney Walter P. Jones (Jones), of respondent's Richmond District Estate and Gift Tax Group.Largent expressed his need for a closing letter with respect to petitioner's first return. On February 28, 1981, unaware *45 of an ongoing audit of petitioner's second return by Fiske in Bileys Crossroads, Jones surveyed petitioner's first return and stamped the return "Closed-Survey Before Assignment." On March 19, 1981, the District Director of the Richmond District, relying on Jones' action, issued an estate tax closing letter, Letter 627, to petitioner, which stated as follows: Our computation of the Federal Tax liability for the above estate is shown below. It does not include any interest that may be charged. You should keep a copy of this letter as a permanent record because your attorney may need it to close the probate proceedings for the estate. This letter is evidence that the Federal tax return for the estate has either been accepted as filed, or has been accepted after an adjustment that you agreed to. This is not a formal closing agreement under section 7121 of the Internal Revenue Code. We will not reopen this case, however, unless Revenue Procedure 74-5, reproduced on the back of this letter, applies. On April 9, 1981, Fiske spoke with Largent concerning the audit of petitioner's second return. At that time Largent informed Fiske *46 that the estate had received a closing letter dated March 19, 1981. Subsequent to that conversation, Fiske conferred with his group manager and Jones, the estate tax attorney in the Fichmond District. As a result of that conversation, the Richmond District Estate and Gift Tax Group realized that Jones' survey of petitioner's first return had been made erroneously and that the closing letter should not have been sent. On April 10, 1981, Fiske spoke with Largent and advised him that the closing letter had been erroneously issued. Fiske also sent Largent a letter to that effect, dated May 7, 1981, advising him that the case was being administratively reopened. On May 19, 1981, petitioner, relying on the closing letter, distributed the funds in the estate to the appropriate heirs. On August 10, 1981, petitioner was provided with a copy of Fiske's report of audit changes. On August 19, u981, James M. Omps, executor of the estate, filed a protest against Fiske's report of audit changes. Largent advised Fiske on August 21, 1981, that a protest had been filed. On February 23, 1982, the District Director of the Richmond District, in accordance with Rev. Proc. 81-35, 1981-2 C.B. 588, [3] *47 officially reopened the examination of petitioner's return. Between April 28, 1982 and October 1, 1982, petitioner pursued an administrative solution to this case with respondent's Washington, D.C. Appeals Office. Unable to reach an agreement with petitioner, respondent, on October 1, 1982, sent petitioner the notice of deficiency upon which this case is based. Petitioner's sole contention is that the case was erroneously reopened and, therefore, the notice of deficiency is invalid. He argues that either respondent did not follow the guidelines for reopening a case as set forth in Rev. Proc. 81-35, or that respondent failed to provide written notification as required by section 7605(b). Petitioner further argues that respondent's failure to give proper notice of the reopening caused him to detrimentally rely on the closing letter issued to him. We reject petitioner's contentions. *48 First, it is apparent that respondent did follow the guidelines of Rev. Proc. 81-35. Section 4.01-3 of Rev. Proc. 81-35 states: The Internal Revenue Service will not reopen any case closed after examination by a district office, service center or Office of International Operations to make an adjustment unfavorable to the taxpayer unless * * * Other circumstances exist that indicate failure to reopen would be a serious administrative omission. As noted in the statement of facts, two returns were submitted by petitioner. In order to expedite the final disposition of the real estate in question, petitioner's attorney, Largent, requested an early examination of the return, and respondent's Richmond office complied with the request. There is nothing in the record to indicate that Largent notified the Service that the two returns had been filed. When Largent was contacted by respondent's attorney auditing the first return Largent did not disclose to that attorney that another audit was being conducted. In addition, when Largent received the closing *49 letter from the attorney auditing thr first return, he neglected to check with the attorney auditing the second return to verify the validity of the closing letter. These facts indicate an administrative error on respondent's part that could have been avoided if petitioner had acted in good faith. When errors of this nature are made under such circumstances, we think a "failure to reopen would be a serious administrative omission." Rev. Proc. 81-35. Further, this Court has previously stated "that procedural rules * * * are merely directory, not mandatory, 'and compliance with them is not essential to the validity of a notice of deficiency.'" Collins v. Commissioner,61 T.C. 693, 701 (1974), quoting Luhring v. Glotzbach,304 F.2d 560, 563 (4th Cir. 1962). Accordingly, even if respondent had not followed the procedures of Rev. Proc. 81-35, we would still uphold the reopening of the case, and thus the validity of the notice of deficiency. Second, respondent was not required to send a section 7605(b) written notification *50 to petitioner. Section 7605(b) provides: No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. As the statute indicates, a written notification is necessary only when a request is made for a second inspection of the taxpayer's books of account. Grossman v. Commissioner,74 T.C. 1147, 1155-56 (1980); see Gardner v. Commissioner,T.C. Memo. 1976-337. The parties have stipulated that prior to May 7, 1981, when an informal memorandum was sent to Largent informing him that the case would be administratively reopened, the Service had never inspected petitioner's books of account. Indeed, the record shows that the closing letter was sent without the Service ever having inspected petitioner's records. [4] Accordingly, where there is no request for a second inspection *51 of the taxpayer's books of account, the written notification prescribed by section 7605(b) is not required. Finally, petitioner claims that respondent's failure to give him proper notice caused him to detrimentally rely on the closing letter. We cannot believe that petitioner was caught off guard. As early as April 10, 1981, over one month before the estate's funds were distributed, Largent, petitioner's attorney, knew that the closing letter had been erroneously issued. Again, on May 7, 1981, a written memorandum was sent to Largent informing him that the case was being reopened. The closing letter clearly stated that the case could be reopened subject to the guidelines of Rev. Proc. 74-5, 1974-1 C.B. 416. [5] Given this much notice to the contrary, petitioner cannot now claim that he justifiably *52 relied on the closing letter. Another matter needs to be addressed. The parties stipulated that the sole issue in this case is to determine whether the closing letter sent by respondent precluded him from issuing a valid notice of deficiency. Further, at paragraph 4 of his petition, petitioner's arguments focused solely on that issue.[6] Yet, in his brief submitted to this Court, petitioner focuses his argument on the substantive underlying issue, i.e., the valuation of the real estate. [7] Respondent argues in his reply brief that petitioner cannot contest the real estate valuation at this time. We agree. By stipulating to the sole issue for determination, we think petitioner is deemed to have conceded the real estate valuation issue. As stated in Rule 91(e): A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation * * * The Court will not permit a party to a stipulation to qualify, change, or contradict *53 a stipulation in whole or in part * * * Further, with regard to the petition, Rule 34(b)(4) and (5) states that the petition shall contain the following: (4) Clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability. The assignments of error shall include issues in respect of which the burden of proof is on the Commissioner. Any issue not raised in the assignment of errors shall be deemed to be conceded. Each assignment of error shall be separately lettered. (5) Clear and concise lettered statements of the facts on which petitioner bases the assignments of error, except with respect to those assignments of error as to which the burden of proof is on the Commissioner. The petition in this case fails to raise the real estate valuation issue.Citing Rule 34(b)(4), we have previously ruled that any issue not raised in the assignment of errors shall be deemed *54 to be conceded. Gordon v. Commissioner,73 T.C. 736, 739 (1980). Accordingly, we hold that petitioner has conceded the real estate valuation issue. *55 To reflect the conclusions reached herein, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years 1980 through 1982.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Rev. Proc. 81-35, 1981-2 C.B. 588, supersedes Rev. Proc. 74-5, 1974-1 C.B. 416, which superseded Rev. Proc. 72-40, 1972-2 C.B. 819. Rev. Proc. 81-35 has been superseded by Rev. Proc. 83-19, 1983-1 C.B. 677↩.
4. The closing letter was based solely on the delinquent Federal estate tax return filed on July 13, 1980. We have ruled that a mere examination of the taxpayer's tax return and accompanying schedules is not an inspection of the books of account within the meaning of section 7605(b). Grossman v. Commissioner,74 T.C. 1147, 1153↩ (1980).
5. As noted in footnote 3, Rev. Proc. 74-5 has been superseded by Rev. Proc. 81-35↩.
6. In his petition, petitioner alleged four grounds disagreeing with the determined deficiency and addition to tax: 1. The Executor received a statement from the Internal Revenue Service dated 1/12/81 stating that the Estate of Jack C. Keeler was paid in full. 2. An Estate Closing Letter was received dated March 19, 1981, signed by the District Director. 3. The District Director has not given notice of any change in the status of the Closing Letter. 4. On May 19, 1981, the Executor made final settlement of his account and both the purchaser and the Executor relied on the Estate Closing Letter to distribute funds. ↩
7. The decedent owned certain real property at the time of his death in 1972. On the decedent's Federal estate tax return, the fail market value of the property was listed as $80,000. This amount represented the assessed value for property tax. In further support of this amount, petitioner claims that the decedent had tried to sell the property in 1970 or 1971 for $69,000, but had been unsuccessful. Respondent counters by noting that the property was sold in 1975 for $189,000, and that this more closely represented the fair market value. After adjusting for two years of appreciation in the property, respondent concluded that the fair market value of the property was $170,000 at the time of decedent's death.↩